TUCKER, Judge
(dissenting).
I respectfully dissent from the decision reached in the instant case, and find that I am in substantial disagreement with the majority in the conclusions to be properly drawn from the record and the evidence before us.
It is true that the evidence does not justify holding that the sheriff’s personnel had or was chargeable with knowledge regarding the specific condition or disease which was causing the decedent’s difficulty until 6:00 P.M., but the record abounds with proof that it came to the knowledge of the sheriff’s department about 11:30 A.M. that Rhodus was seriously ill for whatever reason might have been the causative factor. He remained without medical attention until his death between 8:00 and 8:30 P.M. on April 24, 1967. Commencing about 11:30 A.M. on the subject date the deputy sheriffs made several fruitless calls to Dr. Chester Williams, the coroner, in attempting to procure his medical attention for Rhodus. A Dr. Selser was called without success.
Then Sheriff Bryan Clemmons made a call to his own personal physician at the late hour of 5:30 P.M., which brought into motion his learning about 6:00 P.M. that the decedent was a diabetic. Then the sheriff, without objection from appellant’s counsel, related that he was told over the telephone by his physician that though Rhodus was a diabetic, he “was in no immediate danger”. This last quoted statement is the rankest type of hearsay evidence, and, though it is not controverted, neither is it corroborated or supported. Irrespective of the veracity of the quoted hearsay statement, the stark fact is that Rhodus was dead shortly after 8:00 P.M. on the day in question from diabetic acidosis.
I do not question the admissibility of the hearsay evidence given without objection being raised, but it appears to me that the majority has attached entirely too much weight to this lone item of hearsay testimony at the expense of the remainder of the evidence.
Though not being apprised of the specific cause of the decedent’s serious illness, the danger to Rhodus was readily apparent to the deputy sheriffs, and the degree of care, under the general rule of ordinary and reasonable care, was elevated under the circumstances, and assumed greater proportions. See 38 Am.Jur. 673 et seq., Sec. 29.
I do not believe that the procedure adopted by the sheriff’s office in determining whether a prisoner is a diabetic, whereby the sheriff’s personnel awaits .information from the prisoner or looks for an identifying card or tag, is germane to a resolution of the issues here.
Simply put the prisoner was seriously sick, and he was entitled to medical attention and treatment which he did not receive. The failure of his custodian to see that he got this attention was a violation of the rule of ordinary and reasonable care.